IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE ESBENSEN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 19-1633 |
| | : | |
| ANDREW SAUL,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    October 14, 2020

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of the Social Security Administration (the "Commissioner"), which

denied the application of Michelle Esbensen ("Plaintiff" or "Esbensen") for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act").

Presently before the Court is Plaintiff's "Brief in Support of Motion for Summary Judgment" ("Pl.

Br.") (Doc. 12) and "Defendant's Response to Request for Review of Plaintiff" ("Def. Br.") (Doc.

15), together with the record of the proceedings before the Administrative Law Judge ("ALJ")

(Doc. 8).  Plaintiff argues that "the ALJ's opinion is not based on substantial evidence and must

be set aside." (Pl. Br. at 9).  The Commissioner seeks the entry of an order affirming the decision

of the ALJ.  (Def. Br. at 1).  For the reasons set out below, we will deny Plaintiff's request for

review and affirm the decision of the ALJ.

---

[1] Andrew Saul became the Acting Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul should be substituted as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

## I.      FACTUAL AND PROCEDURAL HISTORY

The request for review presently before the Court concerns an administrative decision rendered by an ALJ on July 22, 2018, which resolved Plaintiff's claim for SSI filed on March 28, 2016.  (R. 11, 14).  The state agency denied her application on September 21, 2016, and she filed a request for a hearing before an ALJ on October 5, 2016.  (R. 14).  That request was granted and the matter proceeded to a hearing on April 25, 2018.  Esbensen, who was represented by counsel, testified at the hearing, as did a vocational expert ("VE").  (*Id.*).

In her application for benefits Esbensen asserted disability beginning June 13, 2013.  (R. 132).   In her Disability Report she listed her impairments as "mini stroke," "anxiety," "depression," "[C]hiari 1 malformation,"[2] and "herniated disc."  (R. 148).  She noted that she had never worked.   (*Id.*).   In her Function Report she wrote, "[e]very morning I wake up with headaches, [t]akes me a few mins [sic] to get out of bed cause of being off balance and my left side of body is weaker.  There are days I just stay in bed, plus I get real bad anxiety."  (R. 155).  She further indicated that her headaches and anxiety affect her sleep.  (R. 156).

We start with the emergency room records, given their importance and Plaintiff's focus upon these visits in her briefing.  These include records from both Aria Torresdale Hospital ("Aria") and Lower Bucks Hospital ("Lower Bucks").  Highlighting certain of these visits, she reported to Aria with complaints of headache on numerous occasions throughout 2016.  Twice in

---

[2] "Chiari malformations are structural defects in the base of the skull and cerebellum, the part of the brain that controls balance." *Chiari Malformation Fact Sheet*, NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, https://www.ninds.nih.gov/disorders/patient-caregiver-education/fact-sheets/chiari-malformation-fact-sheet (last visited August 17, 2020). There are four types.  Type 1 is the least severe, and "happens when the lower part of the cerebellum (called the cerebellar tonsils) extends into the foramen magnum."  *Id.*  Throughout the record it appears documented both as Chiari 1 malformation, with the number, as well as Chiari I malformation, with the Roman numeral.

March 2016, she reported complaints of "leg burning and tingling," "headache," and "numbness." (R. 409, 456).  Various scans were run, indicating "no large acute intracranial hemorrhage or infarct" and "no intracranial abnormality."  (R. 255, 405).  In May 2016, following a motor vehicle accident Plaintiff again went to Aria and testing again "showed no acute intracranial findings." (R. 271).  In June 2017, Plaintiff went to Lower Bucks for "headache and vomiting."  (R. 574). Her CT scan did not demonstrate any abnormality.  (R. 575).

The record also includes reports from office visits.[3]  There is a visit to Jefferson Neurology from May 5, 2016, which indicated that following treatment of injections, Plaintiff had a few years without headaches.  (R. 255).  There are progress notes from Global Neurosciences Institute, LLC physician, Erol Veznedaroglu, MD from March and April 2018.  (R. 612).  One of these progress notes stated that "[s]he has had increasing migraine-type headaches," and recommended magnesium and B2.  (R. 612).  It also noted that "it would be unlikely that she would ever need any intervention for her Chiari."  (R. 612).  There are records concerning her mental health from February through April 2018 provided by mental health providers Fairmount Behavioral Health System ("Fairmount") and New Life of Community Health Services ("New Life"), including a diagnosis from Fairmont of "major depressive disorder," "generalized anxiety disorder," and "alcohol use disorder."  (R. 208, 210, 613).

On July 28, 2018, the ALJ issued her decision, finding that Esbensen "is not disabled."  (R. 25).  She sought review in the Appeals Counsel, but that body declined to disturb the ALJ's decision, rendering it the final decision of the Commissioner.  (R. 1).  This litigation followed.

## II.    STANDARD OF REVIEW

---

[3] While there are orthopedic records (R. 223) as well as primary care records (R. 304), we focus on her neurology treatment, as it is most pertinent to her claims in this court.

This Court must determine whether substantial evidence supports the Commissioner's decision.   42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).   Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence."   *Rutherford*, 399 F.3d at 552.   The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552).   The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.   DECISION UNDER REVIEW

The issue before the ALJ at the time of the decision was whether Esbensen had been disabled within the meaning of the Act at any time since the alleged onset date of June 13, 2013. In making this determination, he relied upon the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).   At Step One, the ALJ found that she "ha[d] not engaged in substantial gainful activity since March 28, 2016, the application date."   (R. 16).   At Step Two, he found that Esbensen had demonstrated that she suffered from "severe impairments" including "a history of Chiari malformation, migraines, obesity, anxiety disorder, affective disorder, learning disability, and panic disorder with social anxiety."   (*Id.*).   At Step Three, the ALJ concluded that Esbensen "[did] not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)," and therefore could not establish her entitlement to benefits on that basis, requiring that the evaluation process continue.   (R. 17).

The ALJ then considered Esbensen's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  He determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except simple one or two-step work and it does not involve close work with others in a team work situation."  (R. 20).

At Step Four, the ALJ noted that Plaintiff "has no past relevant work."  (R. 24).  At Step Five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (R. 25).  Thus, the ALJ found that Ebensen was "not disabled."  (*Id.*).

## IV.   DISCUSSION

Esbensen asserts that three legal deficiencies require the Court to vacate the ALJ's decision.  First, she argues that "[t]he ALJ failed to take into account the cumulative effect of her impairments and their levels of severity."  (Pl. Br. at 9).  Next, she contends that "[t]he ALJ failed to properly take into account the effects of [her] medications."  (*Id.* at 11).  Finally, she claims that "[t]he ALJ improperly discredited her subjective complaints."  (*Id.* at 12).

### A.  Cumulative effects

Plaintiff explains that the ALJ must consider the cumulative effects of all of her impairments.  She asserts that the ALJ must consider the combination of impairments in determining the severity of her impairments and in formulating the RFC.  Plaintiff notes that she "has been diagnosed with Chiari malformation, severe atypical migraine headaches with indication of TIA, severe depression, lumbar disc abnormalities, and as having a borderline range of

intelligence," and asserts that "[n]owhere in the ALJ's opinion does he take into account the totality of Plaintiff's impairments." (Pl. Br. at 11).

Plaintiff did not point to particular steps in the process where the ALJ did not consider her impairments in combination. Rather, she noted that an ALJ must consider all impairments when evaluating severity and evaluating RFC. (*Id.* at 9–10). Then Plaintiff made a blanket statement, alleging that there is "[n]owhere in the ALJ's opinion" that the combination of impairments was considered. (*Id.* at 11). While the Plaintiff did not point to specific instances where this should have been considered, nor did she assert how such consideration should have affected the outcome, we will discuss the ALJ's determination of impairment severity and evaluation of the RFC, based on the assertion that these are two stages where a combination of impairments must be considered.

### 1. Severity of Impairments

In determining the severity of Plaintiff's impairments, the ALJ must consider whether her impairments individually or in combination are sufficiently severe. 20 C.F.R. § 416.923. The ALJ's decision demonstrates that he did consider Plaintiff's combination of impairments. In discussing Plaintiff's conditions, the ALJ found that the following were severe: "a history of Chiari malformation, migraines, obesity, anxiety disorder, affective disorder, learning disability, and panic disorder with social anxiety." (R. 16). The ALJ then also discussed additional impairments, noting that "the evidence of record establishes the presence of the medically determinable impairments of degenerative disc disease, transient neurologic deficit episode, closed head injury, and asthma." (R. 16). The ALJ found these impairments "non-severe," and explained that the record "[did] not establish that any of these impairments have caused work-related functional limitations for a period of twelve continuous months or [had] more than a minimal effect on the claimant's ability to perform basic work activities." (R. 17).

The ALJ then progressed to Step Three, and determined that Esbensen "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1." (R. 17).  The ALJ determined that Plaintiff did not meet Listing 11.00 (Neurological Disorders), noting that she "has a normal gait and stance," and pointing to a record that stated "[n]o sensory deficit noted. Strength 5/5 in the upper and lower extremities."  (R. 17, 327).  The ALJ then held that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of 12.02, 12.04, 12.05, and 12.06." (R. 17).  The ALJ explained that Plaintiff had "moderate limitation" with respect to "understanding, remembering, or applying information" as well as "concentrating, persisting, or maintaining pace." (R. 18).  He found "mild limitation with respect to "interacting with others" and "adapting or managing oneself." (R. 18).  Thus, the ALJ concluded that "the 'paragraph B' criteria[4] are not satisfied." (R. 18).  The ALJ also indicated that Plaintiff did not meet "'paragraph C' criteria,"[5] as "the evidence of record does not establish a medically documented history of the existence of a disorder" to the extent required by paragraph C.  (R. 18).  The ALJ thoroughly discussed Plaintiff's functional limitations, as set out above, discussing the effects of her impairments in combination.  This undermines Plaintiff's position that the ALJ did not consider the combination of her impairments anywhere in the decision and demonstrates that the ALJ did in fact consider all of her impairments in discussing their severity.

---

[4] Paragraph B "criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. . . . To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpart P, Appendix 1.

[5] "To satisfy the paragraph C criteria, your mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. § Pt. 404, Subpart P, Appendix 1.

### 2. RFC Formulation

The ALJ must consider all "medically determinable impairments" in formulating the RFC, including both severe and non-severe impairments. 20 C.F.R. § 416.945. In determining the RFC, the ALJ pointed to medical records that discuss her headaches, neurological history, physical abilities, anxiety disorder, learning disability, panic disorder with social anxiety, and depression. The ALJ then concluded that "[t]he evidence in the record as a whole does not demonstrate that the claimant's impairments have resulted in work preclusive limitations." (R. 23). He noted the "conservative treatment of medication for migraines," that "it was unlikely that she would ever need an intervention or her Chiari I malformation," that her "mental health treatment notes reflect that her status examinations were essentially normal." (R. 23). Further, he gave her "the benefit of the doubt as the limiting effects of her impairments," limiting her to "light exertional work." (R. 23). It is apparent from this discussion that the ALJ did consider her impairments in combination.

### B. Medication side effects

Plaintiff lists the medications she is, or was at one time, prescribed, which include Fiorcet and Topamax for migraines, Tramadal and Neurontin for back pain, and Xanax for anxiety. (Pl. Br. at 12). She asserts that these medications include "potential side of [sic] effects" of "extreme fatigue, drowsiness, confusion and lack of concentration." (*Id.*). She then points to her hearing testimony in which she "testified that she consistently suffers fatigue which is exacerbated by sleep deprivation from headaches and chronic pain." (*Id.*). She explains that the ALJ's decision "is entirely devoid of any discussion concerning the side effects," and asserts that they were "improperly excluded from his evaluation." (*Id.*).

8

At the hearing before the ALJ when asked about her medications, she testified that she is not taking Fioricet or Topamax, but had in the past.  When asked what she is taking she said "they want me to take magnesium and B3 or B12 until I get the bloodwork done."  (R. 38).  She also indicated that she takes Motrin for her headaches, and no other medications for the time being until she got bloodwork done.  (R. 39).  She did not describe any specific side effects from her medications.  In her May 9, 2016 Function Report Plaintiff did not allege extensive side effects.  (R. 155).  She listed the medicines she was taking at the time: Amitriptyline,[6] Lipitor, Bayer Aspirin, Xanax, and Butalbital.  In the spot to list side effects she did not list anything.  (R. 162).  She did note later in the report that the Butalbital, which she took for pain on an "as needed" basis "makes [her] sleepy."  (R. 164).  In addition, she indicated that her sleep is affected by headaches and anxiety.  (R. 156).

In the brief before us, Plaintiff complains of "potential" side effects.  (Pl. Br. at 12).  She does not point to a single medical record to provide evidence of any side effects.  *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 198 (3d Cir. 2012) (*citing* 20 C.F.R. § 404.1529(c)(3) ("The effect of medication on a claimant's ability to work will be considered if it 'can reasonably be accepted as consistent with the objective medical evidence.'").  She does not even cite to a point in the record to support her assertions of which medications she is prescribed or the time period during which she took them.  Upon review of the record, we do not see indications in the medical record as to extended side effects she was experiencing.[7]  The ALJ did not err in failing to discuss the potential side effects of medications where there is no particular allegation that Esbensen was

---

[6]   Amitriptyline   is   an   antidepressant   medication.    *Amitriptyline*, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a682388.html (last visited August 17, 2020).

[7] We note one point in March 2016 where she was discharged from Aria with a prescription for Topamax, and she indicated in an office follow up on May 5, 2016 that it made her "feel worse." (R. 256).  She was told to discontinue its use and was prescribed Elavil and Fioricet.  (R. 256–7).

experiencing such side effects.  *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 199 (3d Cir. 2012) (holding that remand was not required where Plaintiff's testimony "indicate[d] possible side effects, not side effects he personally experienced."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *6 (E.D. Pa. Mar. 16, 2020) ("[T]he ALJ did not err by failing to consider the potential side effects of Brown's medications.").

## C.  Subjective complaints

Plaintiff argues that the ALJ erred in finding that Plaintiff's expressed "intensity and persistence" of symptoms "are 'not entirely consistent with the medical evidence' of record."  (Pl. Br. at 12).  She asserts that the severity and persistence she testified to and the record evidence are "entirely consistent."  (*Id.*).  She first points to her migraine headaches, arguing that her five emergency room visits demonstrate the severity.  (*Id.* at 13).  She then points to her diagnosis of "Chiari malformation," which is noted in the medical record, and argues that such a diagnosis is consistent with her testimony reporting "weakness, dizziness, and numbness."  (*Id.* at 13).  Finally, as to her depression, she claims that "she suffers with significant depression and related symptomology which poses a whole host of non-exertional limitations."  (*Id.* at 13).

After summarizing Plaintiff's testimony, the ALJ stated his finding that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. 21).  The ALJ then walked through pertinent medical records.  We will discuss each of the impairments that Plaintiff argues were not awarded the appropriate "intensity and persistence."  (Pl. Br. at 12).

### 1.  Migraines

She first points to her migraine headaches, arguing that the record evidence showing "5 emergency room hospitalizations due to her migraine headaches" is consistent with her testimony

that her "migraines occur up to 4 times a week and sometimes last up to 24 hours." (*Id.* at 13). The ALJ discussed the records of her emergency room visits, as well as office visits related to neurology. (R. 20–23).

First, the ALJ noted, in March 2016, she went to the Aria due to "leg burning and tingling," which progressed to "her face and arms," and was "associated with a headache" and with nausea. (R. 21, 412). A series of head scans were conducted. (R. 21, 412). The CTA was "unremarkable." (R. 21, 449). The CT "showed no large acute intracranial hemorrhage or infarct." (R. 21, 448–49). The MRI showed "no acute intracranial abnormality, no evidence for an acute infarct." (R. 21, 255). Two weeks later, still in March 2016, Plaintiff went to the Aria again. (R. 21, 255). She complained of "headache and numbness." (R. 21, 409). According to a CT scan she had "no acute intracranial abnormality." (R. 21, 405). Her diagnosis was "atypical migraine headaches." (R. 21, 406).

In May 2016, Plaintiff went to the Aria following her involvement in a motor vehicle collision. (R. 21, 271). Again, a CT scan "showed no acute intracranial findings." (R. 21, 271). In June 2017, Plaintiff went to the Lower Bucks, reporting "headache and vomiting." (R. 21, 574). The notes from her CT scan indicated that "[t]he CT of the brain is without contrast" and the doctor did not "see sites of cerebral hemorrhage, infarction, or other abnormality." (R. 21, 575).

In addition to discussing these emergency room records,[8] the ALJ pointed to a visit to a neurologist in May 2016. (R. 21). In this report the doctor noted Plaintiff's history and explained

---

[8] There are additional emergency room records that the ALJ did not discuss. We note these records for the purpose of thoroughness, as Plaintiff has mentioned her "5 emergency room hospitalizations" as evidence of the severity of her migraines. (Pl. Br. at 13). The only one in which Plaintiff presented with complaints of head pain was on May 23, 2017, when she reported to Lower Bucks with her left eye swollen and "[right] sided head pain." (R. 515). This was

that in March 2013 she saw "Dr. Jabbour of Neurosurgery for her known Chiari 1 malformation," and "was offered surgery, but declined."  (R. 255).  After seeking "a second opinion" she "received injections for the migraine, which helped 'cure[]' them.  She was headache free, up until 5 weeks ago, when the headaches started up again."  (R. 21, 255).  She was recommended to stop taking Aspirin, "prescribed Elavil 10mg for preventative therapy and Fioricet as needed for abortive therapy," and counseled on "smoking cessation."  (R. 257).   The ALJ noted that the treatment prescribed to Plaintiff throughout the medical records was "conservative treatment of medication for migraines."  (R. 23).  The ALJ cited to the May 2016 record from Jefferson described in this paragraph, where she was prescribed Elavil and Fioricet.  (R. 257).  He next cited a March 2018 record from Dr. Erol Veznedaroglu at Global Neurosciences Institute, LLC, which noted that her migraines "usually resolve when she goes to a dark room to rest and taking Fioricet when necessary."  (R. 593).  Finally, he cited an April 2018 record in which Plaintiff was recommended to take "magnesium" and "vitamin B2," and which further noted that there would be follow up "yearly and [that] it would be unlikely that she would ever need any intervention for her Chiari." (R. 612).

The ALJ's determination that Plaintiff experienced symptoms consistent with migraines, but that "the record as a whole does not demonstrate that claimant's impairments have resulted in

---

following a diagnosis from an eye doctor of "clogged tear duct."  (R. 515).  On a November 5, 2016 visit Plaintiff went to Aria complaining of "diarrhea, nausea, back pain, [and] generalized aches."  Headaches and migraines are not discussed in this record.  On December 20, 2016, she went to Aria, reporting "coughing" and "chest pain" after "her friend gave her a pill for her headache which she thought she was aspirin."  (R. 456).  On January 19, 2017, Plaintiff presented at Lower Bucks, complaining of "mid/upper back pain."  (R. 533).  Headaches and migraines are not noted in this record.  On March 26, 2017, she went to Lower Bucks for "vomiting and chills." (R. 526).  On May 23, 2017 she reported to Lower Bucks with her left eye swollen and "[right] sided head pain."  (R. 515).  This was following a diagnosis from an eye doctor of "clogged tear duct."  (R. 515).  On November 21, 2017, she went to Lower Bucks for "lower back pain."  (R. 564).

work preclusive limitations" is based on substantial evidence.  (R. 23).  The ALJ discussed details of her emergency room visits, neurological doctor's visits, and prescribed treatment.  Plaintiff has not indicated any specifics or pointed to any particular record to support her assertion that her migraines are of greater severity than the ALJ found, aside from pointing out that she made multiple hospital visits.  The ALJ was thorough in his assessment of her migraines, and his finding is supported by substantial evidence.

### 2.   Chiari malformation

With respect to this impairment, Plaintiff's entire argument is as follows: "The record confirms a diagnosis of Chiari malformation, which is consistent with her reported symptoms of weakness, dizziness, and numbness."  (Pl. Br. at 13).  Esbensen has not made any argument nor pointed to any portion of the record to indicate that the ALJ's conclusion with respect to the persistent or limiting effects was in error.  In summarizing Esbensen's testimony, the ALJ noted that she testified to having headaches and numbness.  (R. 20–21).  While the ALJ did not find that the "persistence and limiting effects" of her symptoms were "entirely consistent with the medical evidence," he did find that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (R. 21).  Thus, the ALJ did not make a finding that is contrary to Plaintiff's assertion that Chiari malformation is consistent with her "weakness, dizziness, and numbness."  (Pl. Br. at 13).  Further, the ALJ discussed medical records related to Chiari malformation.  Of particular note, the ALJ pointed to a medical record that indicated that "it was unlikely that she would ever need any intervention for her Chiari I malformation."  (R. 23).  The ALJ's determination as to the limiting effects of Plaintiff's Chiari malformation is supported by substantial evidence.

### 3.   Depression

Plaintiff's argument as to her depression is, in its entirety, that "she suffers with significant depression and related symptomology which poses a whole host of non-exertional limitations." (Pl. Br. at 13).  She does not list a single symptom or "non-exertional limitation[]" in support of this conclusory argument.  (Pl. Br. at 13).  She does not point to a single medical record to demonstrate the severity of her depression.  The ALJ discussed Esbensen's medical records with respect to her mental health treatment.  A February 2018 record demonstrated that she was "overwhelmed," as her mother and husband were both sick, her mother in intensive care and her husband in the hospital.  (R. 23).  The ALJ pointed to a "psychiatric evaluation" conducted in March 2018 that demonstrated that "she had normal attitude and behavior; appropriate affect; anxious mood; normal attention and concentration; normal thought process; intact memory; orientation to three spheres; average intelligence; and limited insight and judgment."  (R. 23).  At that time, she was "diagnosed with major depression" and "prescribed Effexor."  (R. 23).  Then, in an office visit in April 2018, "her mental status examination was normal" and she was also prescribed Ambien.  (R. 23).  The ALJ concluded that "[t]he claimant's mental health treatment notes reflect that her status examinations were essentially normal."  (R. 23).  We are unable to say that the ALJ's determination as to the severity was not based on substantial evidence.

## V.    CONCLUSION

We see no basis for a remand in this case under Sentence Four of 42 U.S.C. § 405(g).  The ALJ complied with his obligation to evaluate the evidence and explain why he relied on the evidence he did.  The ALJ considered the cumulative effects of Plaintiff's impairments both in discussing the severity of her impairments and in formulating the RFC.  The ALJ was not required to discuss potential side effects.  Finally, the ALJ's findings as to intensity and persistence of Plaintiff's impairments are supported by substantial evidence on the record.  Upon consideration

of the administrative record, we will deny Plaintiff's request for review.  An appropriate order will follow.

BY THE COURT:


/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
United States Magistrate Judge